**LOUISIANA PUBLIC SERVICE COMMISSION, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1355.**

United States District Court
E. D. Louisiana, Baton Rouge Division.

July 9, 1954.

Fred S. LeBlanc, Atty. Gen., Joel B. Dickinson, Asst. Atty. Gen., Robert A. Ainsworth, Jr., New Orleans, La., for plaintiffs.

W. Crosby Pegues, Jr., General Counsel, Baton Rouge, La., Louis A. Schwartz, New Orleans, La., Paul G. Borron, Jr., Borron, Owen, Borron & Delahaye, Plaquemine, La., for intervening plaintiffs.

Harry McCall, Jr., New Orleans, La., for intervening defendants.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday and Willard R. Memler, Sp. Assts. to Atty. Gen., George R. Blue,

U. S. Atty., Kathleen Ruddell, Asst. U. S. Atty., New Orleans, La., for the U. S., defendant.

Edward M. Reidy, Chief Counsel, and Allen Crenshaw, Associate Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Before BORAH, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.

CHRISTENBERRY, District Judge.

This is an action brought by the Louisiana Public Service Commission against the United States of America, and the Interstate Commerce Commission, under Sections 1336, 2284 and 2321–2325, Title 28, U.S.C.A., to annul, set aside and permanently enjoin enforcement of an order of the Interstate Commerce Commission, hereinafter referred to as the "Commission". The order in question was entered by the Commission on April 5, 1954, and was bottomed upon a report of January 5, 1954, in proceeding No. 31,163, entitled Louisiana Intrastate Freight Rates and Charges, under which the respondent rail carriers operating in Louisiana were required to establish intrastate freight rates and charges in Louisiana no lower than the rates and charges prescribed and provided for in said report.

The American Sugar Cane League of the United States of America, Inc., New Orleans Traffic and Transportation Bureau, the Department of Highways of the State of Louisiana, and the American Turpentine and Tar Company intervened as parties plaintiff. All Class 1 railroads operating in Louisiana intervened as parties defendant. Answers were filed by the United States, by the Commission, and by the intervening railroads. Issue having been joined, the cause came on for hearing on motion of plaintiffs for a preliminary injunction and on the merits.

The jurisdiction of this Court is admitted.

The facts which give rise to the present controversy are these:

On October 20, 1952, twenty railroads operating in Louisiana instituted proceedings before the Commission, seeking an order, after investigation, authorizing an increase of intrastate freight rates in Louisiana, to the same extent and in the same manner as authorized by the Commission with respect to interstate rates and charges, in Ex parte No. 168, Increased Freight Rates, 1948, 276 I.C.C. 9, and Ex parte No. 175, Increased Freight Rates, 1951, 284 I.C.C. 589. Previously thereto, general increase of freight rates had been authorized by the Commission in Ex parte No. 162 and in Ex parte No. 166. Prior to instituting proceedings before the Commission, the railroads had filed petitions with the Louisiana Commission, seeking approval of the increased rates. The Louisiana Commission allowed the increases sought, except on certain commodities, which commodities hereinafter will be referred to as "exempted commodities".

On December 4, 1952, in response to the petition filed by the railroads, Division 1 of the Commission ordered an investigation under Section 13 of the Interstate Commerce Act, 49 U.S.C.A. § 13, of the lawfulness of the carload Louisiana intrastate rates on the exempted commodities, and on February 24, through February 27, 1953, hearings were held before an Examiner of the Commission. After the hearing a report of the Examiner was filed and served. The proposed report found that the intrastate rates imposed by the Louisiana Commission on the exempted commodities, listed in Appendix A to the proposed report, except cottonseed meal, cottonseed hulls, and soya bean meal and fertilizer were abnormally low; that traffic thereunder fails to produce its fair share of revenue to enable the railroad respondents to provide adequate and efficient service, and that such rates cause undue, unreasonable and unjust discrimination against interstate commerce. Exceptions to the proposed report were filed, and oral argument was had before the Commission.

On January 5, 1954, the Commission issued its report, 291 I.C.C. 279. Ultimate findings and conclusions of the Commission are set forth in the report, and are virtually the same as those proposed by the Examiner. The report provided that an order would be issued, making the findings effective unless notified by the Louisiana Commission within 30 days after service that it would promptly authorize the approved increases. This time was subsequently extended to March 1, 1954. Plaintiff and others thereupon filed petitions with the Commission for reconsideration, modification of the report, and further hearing, which were denied by the Commission order of April 5, 1954, under the terms of which the respondent railroads were ordered to establish the intrastate rates prescribed for the commodities named in the report, on May 17, 1954, effective upon five days' notice.

The issue to be determined here relates to the validity of the order of the Commission requiring the rail carriers to increase their Louisiana intrastate rates and charges as prescribed in the report of January 5, 1954.

Section 13(4) of the Interstate Commerce Act, 49 U.S.C.A. § 13(4), prohibits, with respect to intrastate and interstate rail rates, preference and prejudice with respect to persons and localities, and discrimination against interstate commerce. In its report of January 5, 1954, the Commission found that the intrastate rates in question constituted discrimination against interstate commerce, and that intrastate carload rates on sand, gravel and sugar constitute undue and unreasonable advantage and preference to intrastate shippers, and subject interstate shippers of the same commodities to undue and unreasonable prejudice and disadvantage.

The complaint alleges illegality of the final report and order of the Commission on the grounds that they were not justified as against Louisiana intrastate rates, in that the Commission was acting beyond the scope of statutory authority; that the findings were unsupported by substantial evidence or contrary to evidence; and that such action was arbitrary.

■ At the outset, it is proper to consider the scope of this Court's authority to review the orders of the Commission. We take it to be settled law that an order of the Commission is entitled to finality, and may not be set aside, modified or disturbed on judicial review, if such order of the Commission lies within the scope of the Interstate Commerce Statute, and is based upon adequate findings that are supported by substantial evidence.

In the case of Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 111, 56 L.Ed. 308, in discussing the limitation upon the right of courts to review orders of the Commission, the Court said:

"In determining these mixed questions of law and fact, the court confines itself to the ultimate question as to whether the Commission acted within its power. It will not consider the expediency or wisdom of the order, or whether, on like testimony, it would have made a similar ruling. 'The findings of the Commission are made by law prima facie true, and this court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience.' Ill. Cent. R. Co. v. I. C. C., 206 U.S. 441, 27 S.Ct. 700, 51 L.Ed. 1128. Its conclusion, of course, is subject to review, but, when supported by evidence, is accepted as final; not that its decision, involving, as it does, so many and such vast public interests, can be supported by a mere scintilla of proof, but the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order."

In Mississippi Valley Barge Co. v. U. S., 292 U.S. 282, 54 S.Ct. 692, 695, 78 L.Ed. 1260, the Court said:

"The structure of a rate schedule calls in peculiar measure for the use

of that enlightened judgment which the commission by training and experience is qualified to form. [State of] Florida v. U. S., 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. [1077], April 2, 1934. It is not the province of a court to absorb this function to itself. [Cases cited.] The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

■ Sections 13(3) and (4) of the Interstate Commerce Act provide for complaints of rail carriers to the Commission if intrastate rates result in preference for those rates and prejudice and discrimination against interstate commerce, and against persons and localities engaged in that commerce. The Statute authorizes the Commission to hear, consider and decide such complaints, and where found by it to be necessary to prescribe such rates and make such classifications and regulations as will remove and end such preference, prejudice and discrimination. There can be no question but that the Commission had the statutory authority to make the order here complained of. This being so, the only issue remaining for decision is whether the Commission's order has a rational basis in adequate findings, which in turn are supported by substantial evidence.

■ We think it plain that the findings made by the Commission in support of its conclusion are entirely adequate. The findings in the instant case are very similar to those made by the Commission in King v. U. S., 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301. In that case the Florida Railroad and Public Utilities Commission, and others, sought to set aside and annul an order of the Commission requiring Florida railroads to establish intrastate freight rates reflecting increases authorized by the Commission for comparable interstate traffic. In contending that the findings made by the Commission in the instant case are inadequate, the plaintiffs rely in large measure upon the case of North Carolina v. U. S., 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760. In that case, the Court held that mere disparity between rates for comparable intrastate and interstate service was not sufficient per se to establish the requisite unjust discrimination. Because the Court found that the Commission had failed to make any findings that the intrastate rate did not contribute its fair share of earnings to enable the railroads to operate profitably and efficiently, it set aside the Commission's order. However, in King v. U. S., supra, the Court found that the Commission had made the findings which the Court held to be requisite but absent in the North Carolina case. The findings which the Court found adequate in the King case were made by the Commission in the instant case, so that the holding in the North Carolina case is not applicable here.

This brings us to the question of whether the Commission's findings are supported by substantial evidence. In making such determination, the record must be considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

We have considered the entire record, which comprises nearly one thousand pages of testimony and a great number of exhibits. In the belief that no useful purpose would be served by our reviewing the record here we shall not do so. It is sufficient to say that the Commission had before it a large volume of substantial evidence adduced by both sides of the controversy. In reaching its conclusions it was necessary for the Commission to weigh the evidence. That was a function which peculiarly addressed itself to the expertise of the Commission.

We hold that the order complained of has a rational basis in adequate findings, which are supported by substantial evidence.

The complaint is, accordingly, dismissed at plaintiffs' cost.